**Daniel Michael**
**Osman Nawaz**
**Alexander Vasilescu**
**Neal Jacobson**
**Joshua I. Brodsky**
**Lee A. Greenwood**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, NY 10281-1022**
**(212) 336-1060 (Greenwood)**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE**
**COMMISSION,**

                              **Plaintiff,**                    **19 Civ. 661**

          **v.**

**ROBERT C. MORGAN, MORGAN**
**MEZZANINE FUND MANAGER LLC, and**
**MORGAN ACQUISITIONS LLC,**

                              **Defendants.**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY
APPLICATION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY
INJUNCTION, ASSET FREEZE, RECEIVER, AND OTHER RELIEF**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND FACTS ........................................................................................................2

ARGUMENT ..........................................................................................................................5

   I.   DEFENDANTS SHOULD BE TEMPORARILY RESTRAINED AND
       PRELIMINARILY ENJOINED FROM FURTHER VIOLATIONS OF THE
       FEDERAL SECURITIES LAWS ....................................................................................5

      A.  Defendants Violated the Anti-Fraud Provisions of the Federal Securities Laws. .........5

          1.  Defendants Have Made Numerous Material Misrepresentations and Omissions to
              Investors. ...............................................................................................................6

          2.  Defendants Used Fraudulent Devices. ...................................................................8

          3.  Defendants Acted with Scienter ............................................................................9

          4.  Defendants' Conduct Was in Connection with the Offer, Purchase, and Sale of
              Securities. ............................................................................................................10

          5.  Investments in the Notes Funds Are Securities. ...................................................11

      B.  Defendants Are Likely to Continue Their Illegal Conduct .........................................12

  II.  THE COURT SHOULD GRANT ADDITIONAL EQUITABLE RELIEF TO
       PROTECT INVESTORS .................................................................................................12

      A.  An Asset Freeze Should Be Ordered .........................................................................12

      B.  A Receiver Should Be Appointed ..............................................................................13

      C.  The Filing of New Bankruptcy, Foreclosure, Receivership, and Other Actions Should
         Be Enjoined ...............................................................................................................16

      D.  Defendants Should Be Ordered to Produce a Verified Accounting ............................16

      E.  The Court Should Enter An Order Permitting Expedited Discovery in Advance of a
         Preliminary Injunction Hearing and Prohibiting the Destruction of Relevant
         Documents .................................................................................................................17

CONCLUSION ......................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. SEC*, 446 U.S. 680 (1980).................................................................6

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988).......................................................7

*Esbitt v. Dutch-Am. Mercantile Corp.*, 335 F.2d 141 (2d Cir. 1964) ...........................14

*Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)................7

*Reves v. Ernst & Young*, 494 U.S. 56 (1990).......................................................11

*Schauss v. Metals Depository Corp.*, 757 F.2d 649 (5th Cir. 1985)...............................16

*SEC v. Aequitas Mgmt., LLC*, No. 16 Civ. 438, 2017 WL 1206691 (D. Or. Jan. 9, 2017) ............9

*SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431 (2d Cir. 1987) ....................................14

*SEC v. Byers*, 592 F. Supp. 2d 532 (S.D.N.Y. 2008)...............................................14

*SEC v. Byers*, 637 F. Supp. 2d 166 (S.D.N.Y. 2009)...............................................14

*SEC v. Byers*, 609 F.3d 87 (2d Cir. 2010)........................................................13

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) ...................................................5

*SEC v. Infinity Grp.*, 212 F.3d 180 (3d Cir. 2000)...............................................12

*SEC v. Lybrand*, No. 00 Civ. 1387 (SHS), 2000 WL 913894 (S.D.N.Y. July 6, 2000)................16

*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972)............................10, 14

*SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998).....................................................6

*SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 80 (2d Cir. 1975) ........................................5

*SEC v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999) ......................................6

*SEC v. Oxford Capital Sec., Inc.*, 794 F. Supp. 104 (S.D.N.Y. 1992)..............................16

*SEC v. Pentagon Capital Mgmt.*, 725 F.3d 279 (2d Cir. 2013) .....................................6

*SEC v. Pittsford Capital Income Partners, LLC*, No. 06 Civ 6353 T(P), 2007 WL 2455124
   (W.D.N.Y. Aug. 23, 2007).......................................................................10

*SEC v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978) ..................................................7

*SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338 (5th Cir. 2011) ............................................16

*SEC v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990) ...............................................................12, 13

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) ............................................................................11

*SEC v. Watermark Fin. Servs. Grp., Inc.*, No. 08 Civ. 361S, 2012 WL 501450
   (W.D.N.Y. Feb. 14, 2012) ...................................................................................................9, 10

*SEC v. Wencke*, 622 F.2d 1363 (9th Cir. 1980) ...........................................................................17

*SEC v. Whittemore*, 659 F.3d 1 (D.C. Cir. 2011) ........................................................................13

*Smith v. SEC*, 653 F. 3d 121 (2d Cir. 2011) .................................................................................13

## Statutes

15 U.S.C. § 77b ...............................................................................................................................11

15 U.S.C. § 77q ............................................................................................................................5, 6

15 U.S.C. § 78j .............................................................................................................................5, 6

15 U.S.C. § 78t ..................................................................................................................................5

15 U.S.C. § 78u ...............................................................................................................................12

17 C.F.R. § 240.10b-5 .......................................................................................................................6

## INTRODUCTION

Plaintiff Securities and Exchange Commission ("Plaintiff" or the "Commission") respectfully seeks emergency relief to preserve the status quo and protect investors in connection with ongoing fraudulent conduct by defendants Robert C. Morgan ("Morgan"), who was indicted in this District on the afternoon of May 21, 2019, on 46 counts of wire fraud, bank fraud, conspiracy to commit wire and bank fraud, and conspiracy to commit money laundering,[1] Morgan Mezzanine Fund Manager LLC (the "Fund Manager"), and Morgan Acquisitions LLC ("Morgan Acquisitions") (collectively, "Defendants").

Morgan is a developer of residential and commercial real estate projects who has financed his projects using, among other sources of capital, the proceeds of sales of securities directly to investors.   Between 2013 and September 2018, Morgan raised approximately $80 million from more than 200 investors in four sets of purported funds (the "Notes Funds"). Contrary to the representations and disclosures Defendants made to investors, however, Defendants have misused the Notes Funds to make Ponzi scheme-like payments to prior investors and to cover up other mortgage fraud-related conduct.  Many of these investors reside in this District, and they include more than three dozen individuals who invested with their retirement accounts and a pension fund for an electrical workers union.

Emergency relief is necessary to protect investors in the Notes Funds.  Though investors are owed more than $63 million, the Notes Funds have few if any assets beyond the receivables from the loans they have made to other Morgan entities, which are themselves personally guaranteed by Morgan.  Accordingly, a freeze of Morgan's assets will help preserve the status quo and protect against the dissipation of further assets, while also maximizing the value of

---

[1] *See United States v. Frank Giacobbe, et al.*, No. 18 Cr. 108 (W.D.N.Y.) (the "Morgan Criminal Action").

Morgan's existing assets for the benefit of the Notes Funds.  Indeed, news reports indicate that, a day after the recent guilty plea of an individual who used to work for Morgan, and who implicated Morgan in an insurance fraud conspiracy, Morgan listed his primary residence for sale.  Additionally, with the properties in the Morgan portfolio in various stages of marketing and sale, and Morgan's own indictment yesterday, a Court-appointed receiver is necessary to administer and unwind the Notes Funds, make payments authorized by the governing documents, and pursue claims on behalf of the Notes Funds (including claims against Morgan on his personal guaranties).

## BACKGROUND FACTS[2]

Morgan is a developer of residential and commercial real estate projects located primarily in the Northeastern United States.  (*See* Greenwood Decl. ¶ 4.)  Morgan has financed these projects using several sources of capital including sales of securities directly to retail investors.  (*See id.* ¶ 7.)  From 2013 to September 2018, Morgan raised approximately $80 million from these investors, on a continuous basis, in four, separate Notes Funds.  (*See id.*)

The Notes Funds were supposed to help Morgan and his companies acquire multifamily residential properties and other real estate development projects.  (*See id.* ¶¶ 23, 29, 31.)  Morgan created each of the Notes Funds; he managed the first three Notes Funds through the Fund Manager, while he operated the fourth Notes Fund through another entity, Morgan Acquisitions.  (*See id.* ¶¶ 8, 13.)  Through offering memoranda and other communications, Defendants told investors in the Notes Funds managed by the Fund Manager that their investments would be used to make unsecured subordinated loans ("Portfolio Loans") to affiliated Morgan-controlled

---

[2] The relevant facts are set forth more fully in both the Declaration of Lee A. Greenwood, dated May 22, 2019 ("Greenwood Decl."), and the Declaration of Kerri L. Palen, dated May 22, 2019 ("Palen Decl."), which are also referenced herein.

entities ("Affiliate Borrowers") so that those entities could either acquire, manage, or operate existing multifamily properties or so that they could acquire new real estate development properties.  (*See id.* ¶ 23.)  Defendants told investors in the Notes Fund operated by Morgan Acquisitions that their investments would be used in a substantially similar manner.  (*See id.* ¶¶ 29, 31.)  Defendants further told investors that they would be paid a target return of 11% interest on a monthly basis.  (*See id.* ¶¶ 24, 30.)  For later Notes Funds, Defendants told investors that the Portfolio Loans made by earlier Notes Funds had and were performing such that the interest paid on those Portfolio Loans had satisfied the 11% interest payments made by the earlier Notes Funds to investors.  (*See id.* ¶¶ 25-27.)

For the Notes Funds managed by the Fund Manager, Morgan personally guaranteed the repayment of each Portfolio Loan by each Affiliate Borrower, which he charged interest sufficient to meet the Notes Funds' 11% target return to investors.  (*See id.* ¶¶ 24, 28.)  For the Notes Funds managed by Morgan Acquisitions, Morgan personally guaranteed the investor notes issued by Morgan Acquisitions to the individual investors.  (*See id.* ¶ 30.)  Morgan, on behalf of the Fund Manager, signed the subscription agreement pursuant to which investors purchased membership interests in the first three Notes Funds.  (*See id.* ¶ 11.)  Similarly, for the fourth Notes Fund, Morgan, on behalf of Morgan Acquisitions, entered into a loan agreement with each investor and issued a promissory note to the investor in the amount of the loan.  (*See id.* ¶ 13.)

Many of the Affiliate Borrower properties in which the Notes Funds invested did not generate sufficient cash flow to service and repay both their secured lenders and the Notes Funds.  (*See id*. ¶¶ 60-67; Palen Decl. ¶¶ 30-33.)  As a result, Defendants have used the Notes Funds as a single, fraudulent slush fund, repeatedly using the funds for purposes inconsistent with the representations and disclosures made to investors.  (*See* Greenwood Decl. ¶¶ 40-87;

3

Palen Decl. ¶¶ 5-33.)  Moreover, to conceal their fraudulent conduct, Defendants prepared sham loan documents to lend the appearance of legitimate business activity (*see* Greenwood Decl. ¶¶ 38, 42, 44, 50, 52, 84) and transferred funds into and out of multiple bank accounts to disguise the flow of funds (*see* Palen Decl. ¶¶ 13-14, 18, 26, 28, Exs. 1-4).

Defendants have engaged in at least three types of fraudulent conduct with respect to the Notes Funds.  *First*, Defendants have used later-formed Notes Funds to facilitate Ponzi scheme-like redemptions of earlier investors and to repay non-performing, maturing loans made by earlier-formed Notes Funds.  (*See* Greenwood Decl. ¶¶ 40-57; Palen Decl. ¶¶ 12-29.)  To date, the Commission staff have identified at least $15.6 million that Defendants have improperly transferred in this manner.  (*See* Palen Decl. ¶ 9.)  *Second*, lacking sufficient funds from the Affiliate Borrowers themselves, and instead of making good on Morgan's personal guaranty, Defendants have used the Notes Funds, again in a Ponzi scheme-like manner, to make the 11% interest payments back to investors.  (*See* Greenwood Decl. ¶¶ 58-66; Palen Decl. ¶¶ 30-33.)  *Third*, in connection with Morgan's efforts to repay an inflated, fraudulently-obtained loan concerning The Eden Square Apartments in Cranberry Township, Pennsylvania ("Eden Square"), and in order to conceal that fraud, Morgan improperly directed the use of more than $11 million in Notes Fund assets to help pay off the prior loan along with more than $2.6 million in prepayment penalties.  (*See* Greenwood Decl. ¶¶ 67-87.)

## ARGUMENT

**I.   DEFENDANTS SHOULD BE TEMPORARILY RESTRAINED AND PRELIMINARILY ENJOINED FROM FURTHER VIOLATIONS OF THE FEDERAL SECURITIES LAWS.**

Because the Commission is "not . . . an ordinary litigant, but . . . a statutory guardian charged with safeguarding the public interest in enforcing the securities laws," its burden to secure temporary or preliminary relief is less than that of a private party. *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). It need not show irreparable injury, a balance of equities in its favor, or the unavailability of remedies at law. *Id.* at 809. Rather, the Commission must make a substantial showing of likelihood of success on the merits as to both (i) a current violation of the federal securities laws; and (ii) the risk of repetition. *See SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998); *see also Mgmt. Dynamics*, 515 F.2d at 807.

### A.   Defendants Violated the Anti-Fraud Provisions of the Federal Securities Laws.

Defendants have violated Section 17(a) of the Securities Act of 1933 (the "Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder.[3]

Section 17(a) of the Securities Act makes it unlawful for any person, in the offer or sale of a security, to (1) "employ any device, scheme, or artifice to defraud"; (2) "obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading"; or (3) "engage in any transaction, practice, or course of business which operates  or would operate as a fraud or deceit upon the purchaser."  15 U.S.C.

---

[3] In addition to his primary liability under the anti-fraud provisions of the Securities Act and the Exchange Act, Morgan is also liable for the violations of the Exchange Act by the Fund Manager and Morgan Acquisitions as a control person of those entities. *See* 15 U.S.C. § 78t(a).

§ 77q(a).  Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder make it unlawful for any person, in connection with the purchase or sale of a security to make untrue statements of material fact, or to omit material facts.  *Id.* § 78j(b); 17 C.F.R. § 240.10b-5(b).  Rule 10b-5(a) and (c) make it unlawful to use any device, scheme or artifice to defraud any person or to engage in any transaction, practice, or course of business which operates as a fraud or deceit.  17 C.F.R. § 240.10b-5(a), (c).

To establish liability under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, a defendant must have "'(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities.'"  *SEC v. Pentagon Capital Mgmt.*, 725 F.3d 279, 285 (2d Cir. 2013) (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).  Reckless conduct satisfies the scienter requirement.  *See, e.g.*, *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998).

As for liability under Section 17(a) of the Securities Act, the "[t]he requirements for a violation of Section 17(a) apply only to a sale of securities but in other respects are the same as Section 10(b) and Rule 10b-5, except that 'no showing of scienter is required for the SEC to obtain an injunction under [Section 17] (a)(2) and (a)(3).'"  *Pentagon Capital Mgmt.*, 725 F.3d at 285 (quoting *Monarch Funding*, 192 F.3d at 308).  Negligence is sufficient to prove violations of Sections 17(a)(2) or (3) of the Securities Act.  *Aaron v. SEC*, 446 U.S. 680, 696-97 (1980).

### 1.   Defendants Have Made Numerous Material Misrepresentations and Omissions to Investors.

Through offering memoranda and other communications, Defendants told investors in the Notes Funds that their investments would be used to make Portfolio Loans to Affiliate Borrowers so that those entities could more efficiently acquire, manage, and operate existing multifamily

6

properties, or so that they could acquire new real estate development properties.  (*See*

Greenwood Decl. ¶¶ 23, 29, 31.)  Defendants also told investors that the prior Portfolio Loans

made by earlier Notes Funds had always performed so as to generate the funds necessary to

make the monthly 11% interest payments.  (*See id.* ¶¶ 25-27.)

Those statements were false.  In reality, Defendants have run the Notes Funds as a single,

fraudulent slush fund, using investor assets for purposes inconsistent with the representations

they made to investors about how their investments would be used.  (*See id.* ¶¶ 40-87; Palen

Decl. ¶¶ 5-33.)  Those statements were also material.  A statement or omission is material if

there is a substantial likelihood that a reasonable investor would consider such information

important in making an investment decision or if the information would significantly alter the

total mix of available information.  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

Statements or omissions concerning the use of proceeds in a securities offering are

presumptively material.  *See SEC v. Research Automation Corp.*, 585 F.2d 31, 35-36 (2d Cir.

1978) (misleading statements and omissions concerning the use of money raised from investors

are material as matter of law).  Here, Defendants told investors their investments would be used

to make legitimate Portfolio Loans when, in fact, those investments were used to make Ponzi

scheme-like payments of principal and interest payments back to earlier investors and conceal

other fraudulent activity with respect to Eden Square.

Morgan, on behalf of other Defendants, was the "maker" of these material misstatements

and omissions under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011),

because he had ultimate authority and the statements can be attributed to him.  Morgan created

each of the Notes Fund LLCs, all of which were managed by the Fund Manager, and investors

purchased membership interests in the LLCs pursuant to subscription agreements with the Fund

Manager.  (*See* Greenwood Decl. ¶¶ 9-12.)  Morgan is the managing member of each LLC, and he signed each of the subscription agreements with investors on behalf of the Fund Manager, for which he is the managing member and sole owner.  (*See id.* ¶¶ 5, 9.)  Morgan is also the managing member and sole owner of Morgan Acquisitions, with which investors entered into loan agreements and which issued promissory notes to investors signed by Morgan.  (*See id.* ¶¶ 6, 13.)  Moreover, Morgan signed all relevant documents, controlled all bank accounts, and directed the disbursements of moneys from the Notes Funds.  (*See id.* ¶¶ 33-38.)

### 2.   Defendants Used Fraudulent Devices.

Defendants employed schemes to defraud the Notes Fund investors, as well as engaged in fraudulent courses of business, in at least three ways.  First, Defendants misused investor money by using Notes Fund assets to satisfy redemptions of investors in prior or different Notes Funds.  (*See id.* ¶¶ 40-57; Palen Decl. ¶¶ 15-29.)  Second, Defendants misused the Notes Funds to cover interest payments owed to investors in the Notes Funds.  (*See* Greenwood Decl. ¶¶ 58-66; Palen Decl. ¶¶ 30-33.)  Third, with respect to Eden Square, Defendants misused investor money in order to conceal mortgage fraud-related activity by paying off a prior loan, with prepayment penalties.  (*See* Greenwood Decl. ¶¶ 67-87.)

Defendants engaged in multiple deceptive acts in furtherance of the schemes.  Among other things, Defendants papered certain transfers of funds using sham loan documents designed to make the transfers appear legitimate.  (*See* Greenwood Decl. ¶¶ 38, 42, 44, 50, 52, 84.)  This involved preparing loan documents, at times retroactively, to create the appearance that Defendants were using investor money properly and even sometimes to paper over defaults.  (*See* Greenwood Decl. ¶¶ 38, 42, 44, 50, 52, 84.)  Moreover, Defendants moved funds through multiple bank accounts to make impermissible payments back to investors, and to conceal the

true flow of investor money.  (*See* Greenwood Decl. ¶¶ 62-66; Palen Decl. ¶¶ 13-14, 18, 26, 28,

Exs. 1-4.)  *See*, *e.g.*, *SEC v. Aequitas Mgmt.*, *LLC*, No. 16 Civ. 438, 2017 WL 1206691, at *13

(D. Or. Jan. 9, 2017) (magistrate findings and recommendation) ("[A]llegations that the

[defendant] entities continued to seek new investments to cover operations costs and to repay

investors constitute allegations of a scheme that go beyond the allegations of misrepresentations

and omissions in furtherance of that scheme."), *adopted by*, 2017 WL 1429190 (D. Or. Apr. 20,

2017); *see also SEC v. Watermark Fin. Servs. Grp., Inc.*, No. 08 Civ. 361S, 2012 WL 501450

(W.D.N.Y. Feb. 14, 2012) (determining that collateral estoppel "bar[red] . . . relitigating

[defendant's] participation in the scheme" where defendant admitted, among other things, "that

instead of investing the moneys he collected as promised, he used them 'to pay salary and

business expenses, including utilities, cleaning services, landscaping, travel, supplies, mortgage,

rent, and commissions'").

### 3.  Defendants Acted with Scienter.

In making the material misrepresentations and in engaging in the conduct described

above, Defendants acted with scienter.  Morgan knew, or was at least reckless in not knowing,

that he was misusing investor assets because he controlled all aspects of the Notes Funds—he set

up the Notes Funds, he provided his personal guaranty, he controlled the entities that managed

the Notes Funds, he met and spoke with potential investors, he authorized all transfers into and

out of the Notes Funds, and he signed the promissory notes purportedly documenting the various

Portfolio Loans.  (*See* Greenwood Decl. ¶¶ 5-6, 8-9, 13, 18, 21-22, 28, 30, 32-38.)  Moreover,

with respect to Eden Square, Morgan himself directed the use of Notes Fund assets to help pay

off a prior loan that was fraudulently obtained, in order to conceal discovery of that fraud, as

Morgan continued to raise money from investors.  (*See id.* ¶¶ 67-87.)

The actions and mental state of Morgan, the managing member and sole owner of the Fund Manager and Morgan Acquisitions, are attributable to the Fund Manager and Morgan Acquisitions. *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972) (imputing scienter after finding that individual "exercised blanket authority" over entities, and that those entities were thus his "corporate embodiments"); *Watermark Fin. Servs. Grp*, 2012 WL 501450, at *6 (imputing individual's "knowledge and misconduct" to entities "because he was president and principal and ran the day-to-day operations").

### 4. Defendants' Conduct Was in Connection with the Purchase or Sale of Securities or in the Offer or Sale of Securities.

Defendants' misrepresentations and other fraudulent conduct has been "in the offer or sale" and "in connection with the purchase or sale" of securities. *See SEC v. Pittsford Capital Income Partners, LLC*, No. 06 Civ 6353 T(P), 2007 WL 2455124, at *13 (W.D.N.Y. Aug. 23, 2007) ("Here, the SEC's evidence has demonstrated that the fraud prevented investors from redeeming or disposing of the notes by making them believe that [the defendants] were acting consistently with the PPMs."), *affirmed*, 305 F. App'x 694, 696 (2d Cir. 2008).  Although in some instances the relevant disclosures serving as the basis for misstatement liability pre-dated the misconduct that subsequently rendered them false, Morgan was raising funds from investors on a continuous basis from 2013 through 2018 and as such beginning no later than 2016, investor funds were being raised at a time when those disclosures were false.  (*See* Greenwood Decl. ¶¶ 7, 41-45, 60, 63; Palen Decl. ¶¶ 13, 30.)  In addition, although the deceptive acts in furtherance of the scheme were subsequent to initial raises of capital, a significant portion of investor funds were raised contemporaneous with those acts and being diverted soon thereafter to support the ongoing fraud.  (*See* Greenwood Decl. ¶ 7, Ex. 1.)

## 5.   Investments in the Notes Funds Are Securities.

The investments offered, purchased, and sold relating to the Notes Funds are securities. The statutory definition of "security" includes, among other categories, "investment contracts," "notes," and other "evidence of indebtedness."  15 U.S.C. § 77b(a)(1).  The membership interests investors purchased in the first three Notes Funds are investment contracts under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), as each of those Notes Funds included investments by multiple investors in the same limited liability company, for which Morgan, on behalf of the Fund Manager, was investing those funds by making Portfolio Loans.  *See Howey,* 328 U.S. 293 at 298-99.  The promissory notes provided to investors in Morgan Acquisitions do not bear a strong "family resemblance" to the judicially-crafted exceptions of notes that are not securities as set forth in *Reves v. Ernst & Young*, 494 U.S. 56 (1990), and meet the four factors set forth by the Court.  *See Reves*, 494 U.S. at 64-67.  First, the purpose of the promissory notes was purportedly to invest in the acquisition, rehabilitation, or development of a particular property or project, or in similar properties or projects involving other Morgan-related entities, and the investors' motivations were investment-oriented and not focused on transactions related to minor assets or the sale of goods or services by Morgan.  (*See* Greenwood Decl. ¶¶ 31-32.)  Second, the promissory notes were offered and sold to a broad segment of the public, specifically, there were at least 10 investors (many of whom invested on multiple occasions) and $7.9 million raised. (*See id.* ¶¶ 7, 20.)  Third, a reasonable investor would consider the promissory notes to be investments because they were typically for terms ranging from two to seven years and paid 11% interest per year, as well as because Morgan told investors that he would use the investor proceeds to invest in Morgan-related entities, and investors understood that payments to them would come from the interest generated from those investments.  (*See id.* ¶¶ 16, 22, 30-32.)

Fourth, there is no other regulatory scheme that would significantly reduce the risk of these investments.

**B. Defendants Are Likely to Continue Their Illegal Conduct.**

There is a risk that Defendants will continue to misuse investor assets in the Notes Funds. As described above, the alleged misconduct has been consistent and sustained for years, since at least 2016, and done with a high degree of scienter.  Additionally, Defendants still control the Notes Funds, through the Fund Manager and Morgan Acquisitions, and have access to the funds both presently in the Notes Fund bank accounts as well as the bank accounts of the Affiliate Borrowers.  (*See* Greenwood Decl. ¶¶ 94-95.)  Given the nature of the conduct, which includes not only the misuse of investor funds but the alleged covering up of other fraud, a temporary restraining order is necessary to preserve the status quo pending a preliminary injunction hearing.

**II.   THE COURT SHOULD GRANT ADDITIONAL EQUITABLE RELIEF TO PROTECT INVESTORS.**

The Court should order the requested asset freeze, a temporary receiver, and a verified accounting in order to preserve and identify Notes Fund assets.  The Court should also order expedited discovery and prohibit the destruction of relevant documents to allow for the efficient and just prosecution of this action in advance of a preliminary injunction hearing.

**A. An Asset Freeze Should Be Ordered.**

Federal courts in Commission enforcement actions have the authority to impose asset freezes as an exercise of their general equitable powers. 15 U.S.C. § 78u(d)(5).  The purpose of such an asset freeze is to ensure that "any funds that may become due can be collected," *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990), and "to preserve the status quo by preventing the dissipation and diversion of assets," *SEC v. Infinity Grp.*, 212 F.3d 180, 197 (3d Cir. 2000). The Commission's burden of proof in connection with an asset freeze application is substantially

lower than its burden of proof on an application for a preliminary injunction.  *See Unifund SAL*, 910 F.2d at 1041.  To obtain an asset freeze at this stage, the Commission need only show either a likelihood of success on the merits, or that an inference can be drawn that the party has violated the federal securities laws.  *Smith v. SEC*, 653 F.3d 121, 128 (2d Cir. 2011).

A freeze of Morgan's assets is necessary to ensure that sufficient funds are available to satisfy any final judgment the Court might enter ordering the payment of disgorgement.  *See Unifund, SAL*, 910 F.2d at 1041-42.  Here, the proposed asset freeze, which includes accounts and assets over which Morgan has actual or potential control, would prevent further dissipation of assets that may be necessary to satisfy a final judgment.  The potential for the dissipation of assets by Morgan is not theoretical.  Within the last week, after a guilty plea by a former employee that implicated Morgan in an insurance fraud conspiracy, Morgan listed his primary residence for sale.  (*See* Greenwood Decl. ¶ 97.)  Morgan's real estate portfolio is in various stages of the marketing and sale process.  (*See id.* ¶ 98.)  Despite Morgan's own indictment on fraud charges on May 21, 2019, in the Morgan Criminal Action, Morgan still has access to the cash flow being generated by the Affiliate Borrowers on an ongoing basis.

## B.  A Receiver Should Be Appointed.

A "district court has broad equitable power to fashion appropriate remedies for federal securities law violations."  *SEC v. Whittemore*, 659 F.3d 1, 9 (D.C. Cir. 2011) (internal citations omitted).  Although the Securities Act and the Exchange Act do not specifically vest the Court with the power to appoint a receiver or monitor in a civil injunction action brought by the Commission, courts have consistently held that such a power exists in order to effectuate the purpose of the federal securities laws.  *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("There is

no question that district courts may appoint receivers as part of their broad power to remedy violations of federal securities laws.").

Courts appoint receivers when they are necessary to: (1) preserve the status quo while various transactions are being unraveled in order to determine an accurate picture of the fraudulent conduct, *Manor Nursing Ctrs.*, 458 F.2d at 1105; (2) protect "those who already have been injured by a violator's actions from further despoliation of their property or rights," *Esbitt v. Dutch-Am. Mercantile Corp.*, 335 F.2d 141, 143 (2d Cir. 1964) (internal quotations omitted); (3) prevent the dissipation of the defendant's assets pending further action by the court, *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987); or (4) install a responsible officer of the court who could bring the companies into compliance with the law, *id*. at 436-37.

Receiverships are appropriate over entities owned and controlled by the defendant and used to perpetrate the fraud. *See SEC v. Byers*, 592 F. Supp. 2d 532, 534-35 (S.D.N.Y. 2008) (receiver was appointed over two individual defendants, five entity defendants, and approximately 240 entities that the defendants owned or controlled). Even a small amount of commingling of tainted funds between entities controlled by the defendant will justify the inclusion of the entity in a receivership. *See SEC v. Byers*, 637 F. Supp. 2d 166, 178 (S.D.N.Y. 2009) ("[T]here is some evidence that commingling occurred, and the law does not appear to require more than that.").

Notwithstanding certain purported recent steps Morgan has taken to hand over the administration of the Notes Funds to a third party (*see* Greenwood Decl. ¶¶ 94-95), the appointment of a receiver over the Notes Funds and the Fund Manager is necessary for all of the above reasons. The appointment of a receiver on an emergency basis is necessary because of the current status of the Notes Funds. Morgan, the control person who administers the Notes Funds

14

through the Fund Manager and Morgan Acquisitions, has been indicted in the Morgan Criminal Action on 46 counts of wire fraud, bank fraud, conspiracy to commit wire and bank fraud, and conspiracy to commit money laundering.  (*See id.* ¶ 72.)  The Notes Funds have satisfied additional investor redemptions using other Notes Funds as recently as February, and the Notes Funds received additional funds from the sale of a property owned by an Affiliate Borrower last month.  (*See id.* ¶¶ 91-93.)  An independent Court-appointed receiver, answerable to the Court, will take control of the assets, secure them, prepare an accounting, unravel the numerous fraudulent transactions in which Morgan has engaged, recover Notes Fund assets, institute affirmative claims against Morgan and possibly others on behalf of the Notes Funds for the benefit of harmed investors, and craft an equitable distribution plan for the Notes Fund assets. At present, the Notes Funds' primary assets are receivables on the Portfolio Loans they have extended to the Affiliate Borrowers, which are personally guaranteed by Morgan.  (*See id.* ¶¶ 89-90.)  An independent Court-appointed fiduciary is needed in order to monetize and distribute these assets.

For the Court's convenience, the Commission staff obtained receiver proposals from three candidates for the Court's consideration, which the Commission staff will provide to the Court upon request.  If the Court is inclined to consider these candidates, the Commission staff recommends Robert Knuts of the law firm Sher Tremonte LLP in New York, New York.  The Commission staff believes that Mr. Knuts' experience and fee structure are appropriate for this case.  In addition, because of Morgan's extensive contacts in this District, Mr. Knuts' lack of connections to the district make it less likely that he will confront potential conflicts of interest in carrying out the receivership duties.

**C. The Filing of New Bankruptcy, Foreclosure, Receivership and Other Actions Should Be Enjoined.**

"It is axiomatic that a district court has broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions." *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 340-41 (5th Cir. 2011) (citing *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985) and *SEC v. Wencke*, 622 F.2d 1363, 1372 (9th Cir. 1980)).

An anti-litigation injunction that enjoins the filing of any new bankruptcy, foreclosure, receivership, or other actions by or against the Notes Funds or the Fund Manager is required here to prevent potentially disparate actions in different courts that could affect the receivership assets subject to this Court's jurisdiction and control. Such an injunction is also necessary in light of the likelihood of additional actions that may be filed as a result of the criminal charges against Morgan. An anti-litigation injunction will preserve the Court's jurisdiction over the receivership assets, and permit the receiver to marshal assets to prevent a race to the courthouse by different noteholders that could result in inequitable distribution of the assets, that would potentially remove assets from the receivership estate, and that would also require the receiver to spend resources defending litigation.

**D. Defendants Should Be Ordered to Produce a Verified Accounting.**

Courts may impose the equitable remedy of a sworn accounting to provide an accurate measure of all funds obtained as a result of fraudulent activity, as well as a measure of unjust enrichment and a defendant's current financial resources. *See, e.g.*, *SEC v. Lybrand*, No. 00 Civ. 1387 (SHS), 2000 WL 913894, at *12 (S.D.N.Y. July 6, 2000); *SEC v. Oxford Capital Sec., Inc.*, 794 F. Supp. 104, 105-06 (S.D.N.Y. 1992). The Commission staff does not know at this time the full extent of the misuse of either the Notes Funds or the funds of the various Affiliate Borrowers that have Portfolio Loans outstanding. An accounting will assist in determining such uses and if

Morgan, in particular, has other as yet unknown assets that should be subject to the proposed asset freeze.

### E. The Court Should Enter An Order Permitting Expedited Discovery in Advance of a Preliminary Injunction Hearing and Prohibiting the Destruction of Relevant Documents.

The Court should grant the Commission's request for expedited discovery in order to permit the Commission to prepare for a preliminary injunction hearing and to act quickly to obtain other records to identify and preserve investor assets and determine the extent of the fraud.  Accordingly, the Commission also respectfully requests an order prohibiting Defendants from destroying or altering relevant documents in order to preserve as much of the evidence that exists as possible.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the accompanying declarations and exhibits thereto, the Commission respectfully requests that the Court grant its application for emergency relief.

Dated:   New York, New York
        May 22, 2019

Respectfully submitted,

By:  /s/ Neal Jacobson
      Neal Jacobson
      Daniel Michael
      Osman Nawaz
      Alexander Vasilescu
      Joshua I. Brodsky
      Lee A. Greenwood
      Attorneys for the Plaintiff
      SECURITIES AND EXCHANGE
        COMMISSION
      New York Regional Office
      200 Vesey Street, Suite 400
      New York, NY 10281-1022
      (212) 336-1060 (Greenwood)